# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VILLEGAS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MATTHEW CATE, et al.,<br><br>　　　　　Defendants.<br>_____ / | CASE NO. 1:10-cv-01917-AWI-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING ACTION PROCEED AGAINST DEFENDANT NEUBARTH AND OTHER DEFENDANTS BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983<br><br>(Doc. 22)<br><br>THIRTY-DAY OBJECTION DEADLINE |

**Findings and Recommendations Following Screening of Amended Complaint**

**I.     Procedural History**

Plaintiff Carlos Villegas, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 14, 2010. On January 3, 2012, the Court screened Plaintiff's complaint and dismissed it, with leave to amend, for failure to state a claim under section 1983. 28 U.S.C. § 1915A(a). Plaintiff filed an amended complaint on March 12, 2012, in which he alleges that prison officials at California State Prison-Corcoran have been deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment of the United States Constitution.

**II.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

1

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**III.    Plaintiff's Eighth Amendment Medical Care Claims**

    **A.    Legal Standard**

Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue. Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1948-49; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on

supervisory personnel under the theory of *respondeat superior*, Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1948-49; Ewing, 588 F.3d at 1235, and executives, administrators, and/or supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Some culpable action or inaction must be attributable to them and while the creation or enforcement of, or acquiescence in, an unconstitutional policy may support a claim, the policy must have been the moving force behind the violation. Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

To maintain an Eighth Amendment claim based on medical care in prison, Plaintiff must show deliberate indifference to his serious medical needs. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)) (quotation marks omitted). The two-part test for deliberate indifference requires Plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096 (quotation marks and citation omitted). Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference. Id. (citation and quotation marks omitted). Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Id. (citation and quotations omitted). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

B.     **Discussion**

  1.     **Objective Element - Serious Medical Need**

The existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (quotation marks and citation omitted).

Plaintiff alleges that his medical problems began in 2000, and he has been diagnosed with degenerative spur formations of the lumbar spine at L2, L4, and L5; reversal of the cervical lordosis; degenerative disc disease; C3/C4 posterior disc protrusion measuring 3mm with impingement of the right and left nerve root; disc desiccation at C5-C6 and C6-C7 with collapse of disc space at both levels; spinal cord impingement and deformation at the anterior surface at the spinal cord; chronic myoligamentous pain syndrome with triggers at bilateral seriatus anterior muscles; loss of strength and sensation in the extremities; torn finger tendons; and hearing loss. Plaintiff describes his condition as serious, chronic, disabling, and painful, and he alleges that he suffers from severe headaches; severe neck muscle spasms; neck and back pain with radiation to the arm and leg; pain and shock to the shoulder and hand; numbness and tingling in the arm, hand, fingers, legs, feet, head and neck; difficulty walking and grasping objects; sleeplessness; decreased appetite; stress; and emotional problems. Plaintiff alleges that he has been repeatedly denied medical care and/or access to appropriate, competent medical care for his serious health issues.

Plaintiff's allegations support his claim that he has serious medical needs, thereby meeting the objective element of his Eighth Amendment claim. Lopez, 203 F.3d at 1131.

  2.     **Subjective Element - Deliberate Indifference**

To state a viable Eighth Amendment claim under section 1983, Plaintiff must also meet the subjective element by showing that each named defendant acted with deliberate indifference to his medical needs. This requires Plaintiff to set forth sufficient allegations demonstrating that each defendant knowingly disregarded an excessive risk of harm to Plaintiff's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994). Relevant here, as set forth below, a complete denial of medical care is not required to show deliberate indifference, Lopez, 203 F.3d at 1132, and prisoners

4

must be able to make their medical needs known to staff who are competent to deal the problem, Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), *abrogated in part on other grounds by* Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Further, treatment decisions based on budgetary concerns do not shield prison officials from liability for deliberate indifference. Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).

### a. **Defendants Langlois and Dureza**

#### 1) **Allegations**

Plaintiff alleges that on November 3, 2008, he was transported to an outside medical clinic approximately one-hundred miles away, where Defendant Langois gave him a TFESI (transforaminal epidural steroid injection).[1] By this time, it was well documented that Plaintiff suffered from chronic pain due to his spinal condition.

Upon his return to his cell, Plaintiff realized that his arm was completely paralyzed; he was previously unaware of the problem because during the trip back to the prison, he was recovering from the anesthesia and he was restrained. Plaintiff was immediately transported to Mercy Hospital in Bakersfield, where Defendant Dureza examined him and told him that if surgery was not performed immediately, he could or would end up paralyzed, which Plaintiff describes as "fear tactics." (Amend. Comp., ¶37.)

Dependent on Defendant Dureza's knowledge, Plaintiff deferred to his expertise and on November 11, 2008, Defendant Dureza performed cervical spine decompression surgery and a cervical diskectomy with fusion and placement of a plate from C5 through C7, as well as an iliac crest bone aspiration. Post-surgery, Plaintiff began losing some control over his left foot and some hearing, and he continues to have weakness and pain in his left arm and hand and pain in his neck and back. Plaintiff felt worse after surgery than he did before.

Plaintiff alleges that Defendant Langlois failed to inform Plaintiff that one of the side effects of a TFESI is temporary loss of function or sensation, and his failure to do so led directly to a serious, unnecessary spinal surgery. Plaintiff alleges that Defendant Dureza performed what was

---

[1] Also spelled Langlosis in the amended complaint.

5

unnecessary surgery, and there was no medical emergency justifying rushing Plaintiff into surgery, which worsened his condition.

### 2)  **Findings**

Assuming that Defendants Langlois and Dureza, who are private parties, acted under color of law as state contract providers, see e.g., Brentwood Academy v. Tennessee Secondary School Athletic Assoc., 531 U.S. 288, 295, 121 S.Ct. 924 (2001); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 954-55 (9th Cir. 2008), Plaintiff's allegations do not support a claim that they acted with deliberate indifference to his medical needs. At most, Defendant Langlois failed to more thoroughly discuss with Plaintiff possible side effects to the injection and Plaintiff disagrees with the course of treatment chosen by Defendant Dureza given the symptoms Plaintiff presented with at the hospital. Neither Plaintiff's disagreement with how his medical issues were addressed, Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981), nor the possibility that another doctor might have handled things differently amounts to deliberate indifference, Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Here, there are no facts alleged which suggest that either Defendant knowingly disregarded an excessive risk of harm to Plaintiff's health. That the surgery was later allegedly determined to be unnecessary or that it perhaps could have been avoided is simply not enough to transform these events into a violation of Plaintiff's federal constitutional rights. The requisite mental state has not been shown, and the Court recommends dismissal of Defendants Langlois and Dureza from this action, with prejudice.

///

        **b.**        **Defendants Neubarth, Clark, and Hasadsri**

        **1)**        **Allegations**

On May 21, 2009, approximately, Plaintiff was examined by Dr. Henry, who noted residual weakness in Plaintiff's left hand and left foot drop. On June 2, 2009, Dr. Henry recommended that Plaintiff be fitted for a left wrist splint and recommended an AFO (ankle foot orthosis) brace for Plaintiff's left foot and ankle. Dr. Henry commented that other doctors screwed up Plaintiff's surgery and he did not want any part of it, and he refused to examine Plaintiff further.

On June 30, 2009, a nerve conduction test revealed a positive slump test on the left and compromised nerves in both wrists. In July 2009, Plaintiff's left leg gave out and he fell and "busted" the tendons in his right pinky finger. (Amend. Comp., ¶42.) On July 30, 2009, Plaintiff's existing morphine prescription was supplemented with a Tramadol prescription.

On August 12, 2009, Defendant Neubarth, a physician at CSP-Corcoran, denied Dr. Henry's recommendation for the issuance of the wrist splint and ankle and foot brace, and he stated there was no evidence of neuropathy, despite evidence to the contrary. Defendant Neubarth also discontinued Plaintiff's morphine on the ground that it was addictive and in the absence of any other medical reason.

On August 17, 2009, a radiology report revealed an avulsion fracture near the fifth distal interphalangeal joint in Plaintiff's right hand. On September 16, 2009, Dr. Smith diagnosed Plaintiff with a mallet finger deformity at the right fifth finger, and he stated that it had occurred at least a month prior and had been untreated. Dr. Smith provided a volar splint.

By October 21, 2009, Plaintiff was in great pain and he filed an inmate appeal against Defendant Neubarth, requesting that he be provided with proper pain medication. Defendant Neubarth came to Plaintiff's cell and violated doctor-patient confidentiality by discussing Plaintiff's medical condition with earshot of at least twenty-five inmates, which embarrassed and humiliated Plaintiff. On October 23, 2009, Defendant Neubarth reduced Plaintiff's morphine prescription

///

///

///

1  because it causes "tolerance/dependence/addition," and he replaced it with Gabapentin, although Plaintiff does not suffer from seizures.[2]

On November 4, 2009, Dr. Smith referred to his report from September 16, 2009, and tentatively diagnosed a rupture of the exterior tendon. Dr. Smith recommended that Plaintiff be referred immediately for an MRI so that Dr. Smith could operate to repair the damage.

After multiple requests and appeals to increase his pain medication, Plaintiff was seen by Nurse Practitioner P. Rouch, who refused to increase his medication and wrote that the increase was not indicated at this time. Plaintiff alleges that "it appears" Rouch is routinely used to deny or refuse treatment, and because he was called in for a medication increase, the visit was a sham because Rouch was unauthorized to increase medication.[3] (Id., ¶51.)

On January 22, 2010, Dr. Correa reviewed Plaintiff's medical file and evaluated his condition. Dr. Correa recommended to the pain committee that Plaintiff's pain medication be increased, and he stated that anywhere else in the country, he would be able to prescribe pain medication himself based on need, but California Department of Correction and Rehabilitation (CDCR)/CSP-Corcoran practices and procedures interfered with his ability to practice medicine and with his training as a doctor. Dr. Correa said that he could not continue to work for CDCR under such oppressive conditions.

On July 13, 2010, Plaintiff's medications were abruptly discontinued, although his symptoms and pain remained unabated.

Plaintiff alleges that Defendant Neubarth denied Dr. Henry's recommendation for a splint and a brace, which were needed and which would have prevented the fall in which he ruptured the tendons in his finger. Plaintiff alleges that had Defendants Neubarth and Clark diagnosed the weakness in his hand and his foot drop earlier, in addition to permitting the recommended splint and brace, he would have been more stable and may not have fallen. Plaintiff also alleges that Defendant

---

[2] Plaintiff does not explain what happened with his morphine prescription between August 12, 2009, and October 23, 2009, but in his declaration, he attests that Defendant Neubarth stopped his pain medication on numerous occasions. (Amend. Comp., court record p. 25.)

[3] Nurse practitioners are permitted to prescribe medication, so it is unclear if Plaintiff is incorrectly alleging that they cannot do so or if Plaintiff is instead alleging that within the prison system, they are not permitted to do so.

8

Neubarth discontinued his pain medication based on Defendant's personal beliefs or dislike of opiates. Plaintiff alleges that Defendant Clark denied Dr. Smith's request for an MRI for no apparent medical reason, and that Defendant Neubarth stated it was not cost effective and Plaintiff did not need an MRI. Plaintiff alleges that Defendants Clark and Neubarth have denied Plaintiff proper, adequate pain relief based not on sound medical reasoning but on their own beliefs and for cost savings.

### 2) **Findings**

Construing the allegations liberally and in the light most favorable to Plaintiff, Defendant Neubarth was directly involved in Plaintiff's medical care at the institutional level, and, based on budgetary concerns and his personal dislike of opiates, he denied Plaintiff medical care which had been recommended and which was necessary. As a result, Plaintiff was left to needlessly suffer additional or increased pain. These allegations are sufficient, at the pleading stage, to allow Plaintiff to proceed against Defendant Neubarth.

However, Plaintiff's amended complaint lacks sufficient allegations to state a claim against Defendants Clark and Hasadsri. Defendant Clark is the Chief Medical Officer at CSP-Corcoran and while Plaintiff alleges that Clark denied the MRI Dr. Smith recommended and he joined Defendant Neubarth in denying Plaintiff appropriate medical treatment, there are no specific factual allegations demonstrating that Defendant Clark was involved in Plaintiff's medical care and knowing disregarded a substantial risk of harm to Plaintiff.

With respect to Defendant Hasadsri, he is mentioned twice in Plaintiff's recitation of the history of his medical condition. Specifically, Defendant Hasadsri referred Plaintiff for an x-ray and an MRI, and he prescribed Tylenol #3 for thirty days in September 2006. (Amend. Comp., ¶¶ 21, 31.) Neither allegation supports a claim that Defendant Hasadsri acted with deliberate indifference to Plaintiff's medical needs.

Based on the foregoing, the Court finds that Plaintiff states a claim against Defendant Neubarth, but he fails to state a claim against Defendants Clark and Hasadsri. The Court recommends dismissal of Defendants Clark and Hasadsri.

///

### c. Defendants Cate, Sallade, Adams, and Lopez

Plaintiff alleges that Defendants Cate, Sallade, Adams, and Lopez are directly responsible for CSP-Corcoran's health care policies; they have ordered severe cutbacks of medication, medical aids and appliances, MRIs, and referrals to outside specialists; and they have allowed prison physicians to go against every surgeon's, specialist's, or expert's opinion that has reached an inmate's medical file. Plaintiff alleges that Defendant Neubarth has become the golden boy of CSP-Corcoran based on policies which impede or deny heath care to inmates, and that Defendant Neubarth was compensated for his willingness to avoid diagnosing conditions, which allowed him to avoid or deny prescribed treatment. Finally, Plaintiff alleges that Defendant Cate had a policy, procedure, practice, or custom of prioritizing public safety and institutional security over medical care.

While the Court is mindful that prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe, 627 F.3d at 342 (citations omitted), the standard is not so lenient as to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," Iqbal, 556 U.S. at 678-79. The sheer possibility that a defendant has acted unlawfully does not suffice. Id. at 678 (quotation marks omitted).

In this instance, the amended complaint does not set forth factual allegations sufficient to support a claim that (1) Defendant Cate, Director of CDCR, (2) Defendant Sallade, Deputy Director of Health Care, (3) Defendant Adams, former Warden of CSP-Corcoran, and (4) Defendant Lopez, current Warden of CSP-Corcoran, were responsible for the creation or enforcement of, or acquiescence in, unconstitutional policies that were the moving force behind the denial of appropriate medical care for Plaintiff. Starr, 652 F.3d at 1205; Jeffers, 267 F.3d at 914-15; Redman, 942 F.2d at 1446-47; Hansen, 885 F.2d at 646. Plaintiff's claim against these executive or managerial-level staff members is premised only on general, conclusory allegations and Plaintiff's allegations fail to support a plausible claim for relief.

///

///

## IV. Conclusion and Recommendation

The Court has screened Plaintiff's amended complaint and finds that it states a cognizable Eighth Amendment claim against Defendant Neubarth. However, the Court finds that the amended complaint does not state any Eighth Amendment claims against Defendants Langlois, Dureza, Clark, Hasadsri, Cate, Sallade, Adams, and Lopez. Based on the nature of the deficiencies and the Court's previous screening order, the Court finds that further leave to amend is not warranted. Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, the Court HEREBY RECOMMENDS that this action proceed on Plaintiff's amended complaint, filed on March 12, 2012, against Defendant Neubarth for violation of the Eighth Amendment, and Plaintiff's Eighth Amendment claims against Defendants Langlois, Dureza, Clark, Hasadsri, Cate, Sallade, Adams, and Lopez be dismissed, with prejudice, for failure to state a claim under section 1983.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   October 10, 2012**               /s/ Sheila K. Oberto
                                   UNITED STATES MAGISTRATE JUDGE